United States District Court
Southern District of New York

1:21-cv-01202

| | |
|---|---|
| Donna Carter, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Ralph Lauren Corporation, | |
| Defendant | |

Plaintiff Donna Carter ("Plaintiff") by attorneys allege upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge, against Defendant Ralph Lauren Corporation ("Defendant" or "Ralph Lauren") as follows:

## NATURE OF ACTION

1.      Since at least 2013, Defendant has manufactured (or caused others to manufacture on its behalf), marketed, distributed and sold at its New York retail locations and by third parties a Polo Ralph Lauren V-Neck Pullover Sweater "100% Pima Cotton" (the "Product").[1]

2.      The images below are of the Product and the fiber content tag sewn onto the product.

---

[1] RN# 41381 CA 56658







3.     The identification and fiber content tags are regulated under the Textile Fiber Products Identification Act, 15 USC §§ 70-70k (hereinafter "Textile Act"), and the regulations implementing the Textile Act, 16 CFR Part 303.

4.     Plaintiff was induced to buy the Product by the words "Pima Cotton" on the product tag and the label sewed into the sweater and the fiber content tag stating "100% Pima Cotton."

5.     A test performed by TexTest, an independent, nationally recognized laboratory found that the Product is actually only composed of less than 7 % Pima Cotton, not "100% Pima Cotton" as Defendant claims. See Exhibit A, TexTest test.

6.     As alleged more fully below, Ralph Lauren Corporation has violated the Textile Act and its accompanying Rules and Regulations by (1) failing to affix an accurate and truthful fiber content tag to the Product; (2) failing to accurately and truthfully disclose the fiber content on the label of the Product; and (3) failing to maintain required records substantiating the fiber content of the Product at each stage of the manufacturing process.

7.     Because the true and accurate fiber content is different than that disclosed on the fiber content tag and the label, the Product is misbranded as a matter of law, and manufacturing, importing, offering for sale, or selling the Product is "an unfair and deceptive act or practice" and an "unfair method of competition" as a matter of law. 15 USC § 70a, *see also id*. at § 70b.

8.     Deceptive acts or practices are, of course, unlawful under the Federal Trade Commission Act (hereinafter "FTC Act"). *Id*. at § 45(a)(1).

9.     Additionally, as more fully described below, Defendant has failed to maintain records sufficient to substantiate the claims on its fiber content tags and labels, which is independently "an unfair and deceptive act or practice" and an "unfair method of competition" as a matter of law. *Id.* at § 70d; *see* 16 CFR § 303.39; *see also id.* § 303.2(d).[1]

10.    Defendant's false, deceptive and misleading claim that the Product is "Pima Cotton" and "100% Pima Cotton" and its violations of the Textile Act and the FTC Act with respect to the "Pima Cotton" and "100% Pima Cotton" claims Defendant made on the Product's labels, packaging, tags and other advertising materials constitute unfair methods of competition and unconscionable, deceptive or unfair acts or practices under New York's General Business Law ("GBL") §§ 349 and 350.

## **GENERAL ALLEGATIONS**

A.  The Product

11.    Ralph Lauren is a publicly traded United States holding company with global and domestic subsidiaries manufacturing, directing others to manufacture for hire, importing, marketing and selling a wide range of merchandise, including apparel, home furnishing and other consumer goods.

12.    Defendant is a global leader in the design, marketing, and distribution of premium lifestyle products in five categories, such as apparel, accessories, home, fragrances, and hospitality.[2]

13.    Defendant sells these products at its Ralph Lauren Men's Flagship Store located at 867 Madison Ave, New York, NY 10021, department store chains such as Macy's and Bloomingdale's, its catalogs, its website and those of third-parties and its wholly-owned outlet stores.

14.    For more than 50 years, Ralph Lauren's reputation and brand have been developed across an expanding number of products, brands, and international markets.

15.    Defendant's brands include Ralph Lauren Collection, Ralph Lauren Purple Label,

---

[2] Ralph Lauren Corporation, About Us, December 21, 2020.

Chaps and Polo Ralph Lauren.

16.    Polo Ralph Lauren is one of Ralph Lauren's top brands, offering premium, distinctive and elegant apparel.

17.    The Product is packaged, marketed, and advertised as being part of the Polo Ralph Lauren collection.

18.    The tag that is sewn into the Product states that the Product is "100% Pima Cotton" and bears the RN number 41381.

19.    The RN number is a form of registered identification number which is issued to U.S. businesses that manufacture, import, distribute, or sell products covered by the Textile, Wool and Fur Acts.[3]

20.    According to the FTC's online RN database, the RN number 41381 is registered to the Ralph Lauren Corporation.

21.    The Textile Act requires that the responsible entity identify itself on the fiber content tag and label of the Product.

22.    Specifically, the tag must include "[t]he name, or other identification issued and registered by the Commission, of the manufacturer of the product or one or more persons subject to section 70a of this title with respect to such product." 15 USC § 70b(b)(3).

23.    In an effort to increase sales and lure customers into purchasing Defendant's expensive apparel, Defendant labels and advertises the Product as being made from "100% Pima Cotton" and "Pima Cotton."

24.    The type of fabric used in apparel such as sweaters is important to consumers such as Plaintiff and is a driving factor in price.

---

[3] FTC: Registered Identification Number, FAQ, December 21, 2020

25.    Thus, Defendant was able to command a higher price for the Product by advertising it to be "100% Pima Cotton" and "Pima Cotton," which is considered to be the highest quality cotton on the market.

26.    Because the Product was not "100% Pima Cotton" and "Pima Cotton" as advertised, Plaintiff and members of the Class paid and continue to pay more than the Product is worth.

B.    Defendant's False and Deceptive Labeling, Marketing and Advertising of the Products

27.    Pima cotton is said to be an ultra-soft fabric that incorporates long fibers while other types of cotton use relatively short fibers.[4]

28.    However, Pima is one of a few kinds of cotton that are extra-long staple (ELS) cotton, which means that their fibers are longer than 34 millimeters.[5]

29.    Thus, today, consumers value Pima cotton for its incredible softness and richness of texture, which could normally be found in high-end forms of clothing, such as Ralph Lauren's clothing lines.[6]

30.    Important cotton fiber qualities, which results in better quality and stronger fabrics include fiber length, fiber strength, and fiber fineness (micronaire).

31.    Generally, longer fibers are also stronger and finer, which is why they are more expensive.

32.    In some cases, manufacturers, particularly outside of the United States, have been found to mix cotton by-products and cheaper varieties of shorter fiber cotton with Pima, Supima, and Egyptian cotton.

---

[4] Boris Hodakel, What is Pima Cotton: Properties, How its Made and Where, What is Pima Cotton, December 22, 2020.
[5] Id.
[6] Id.

33.    For example, a recent report stated garments that are retailed and labeled as Pima Cotton "had the weighted upper quartile length of 0.70 inch, weighted average length of 0.54 inch and numbered average length of 0.42 inch" (10)."

34.    These numbers are well below the usual length of Pima, Supima, or Egyptian cotton fibers.

35.    According to the results of a test performed by an independent, nationally recognized laboratory, the Product contains approximately 7%  Pima Cotton.

36.    The ASTM D 5103 test performed by TexTest determines the length of the cotton fibers in textiles.

37.    The test found that only 7% of the cotton fibers were of such a length that they could truthfully be called Pima Cotton.

38.    The test found that the average length (inches) was 0.856 whereas the American Pima Standard is between 1.2 to 1.48 inches.

39.    Dr. Sabit Adanur, who reviewed the TexTest Report, came to the same conclusion: "to a reasonable degree of scientific certainty, [the Product] is not made of all Pima cotton fibers." Exhibit "B," Expert Report on Fiber Length of Polo Ralph Lauren XXL/TG (11679R).

40.    In fact, the expert determined that based on the test results, the Product "is instead made from a mixture of cotton and other fibers including a significant amount of less expensive shorter cotton fibers or cotton byproduct fibers."

41.    The table below represents the fiber lengths as tested and prior to manufacturing processes:

|  | As Tested | | Prior to Manufacturing Processes |
| --- | --- | --- | --- |
|  | Length Group Lower Limit (inch) | Number of Fibers | Length Group Lower Limit (inch) |
|  | 2.040 | 0 | 2.720 |
|  | 1.920 | 0 | 2.560 |
|  | 1.800 | 0 | 2.400 |
|  | 1.680 | 0 | 2.240 |
|  | 1.560 | 0 | 2.080 |
| Pima Cotton Range | 1.440 | 0 | 1.920 |
|  | 1.320 | 0 | 1.760 |
|  | 1.200 | 0 | 1.600 |
|  | 1.080 | 0 | 1.440 |
|  | 0.960 | 7 | 1.280 |
|  | 0.840 | 46 | 1.120 |
|  | 0.720 | 39 | 0.960 |
|  | 0.600 | 8 | 0.800 |
|  | 0.480 | 0 | 0.640 |
|  | 0.360 | 0 | 0.480 |
|  | 0.240 | 0 | 0.320 |
|  | 0.120 | 0 | 0.160 |
|  | 0.000 | 0 | 0.000 |
|  | Total: | 100 |  |

42.    As a result, the expert, to a reasonable degree of scientific certainty, the Product is not made of 100% Pima cotton fibers.

43.    The main criteria to determine if cotton fiber is Pima or any other type is the fiber length.

44.    ASTM D7641 Standard Guide for Textile Fibers lists the staple length of cotton fibers such as American Upland, Egyptian, American Egyptian, and Pima.

45.    Here, the ASTM D5103 Standard Test Method was used to determine the length and length distribution of manufactured staple fibers also known as the "Single-Fiber-Test."

46.   This is the test method best suitable to determine the fiber lengths in finished products such as sweaters.

47.   The results from TexTest are consistent with the guidelines provided by ASTM International, one of the largest voluntary standards developing organizations in the world, which provides a forum for the development and publication of international voluntary consensus standards for materials, products, systems and services.

48.   ASTM International's members develop technical documents that are the basis of manufacturing, management, procurement, codes and regulations for dozens of industry sectors, including the textile industry.

49.   ASTM International's Standard Guide for Textile Fibers, which was reapproved in 2014, states that the commercial and botanical name "Pima" Cotton refers to an extra-long staple barbadenses (*Gossypium barbadense L*), which has a staple length of approximately one and one-eighths inches (1 1/8 in.) to one and five-eighths inches (1 5/8 in.).

50.   According to the TexTest results, the average length in inches was 0.856: a far cry from the American Pima Standard, which is between 1.2" to 1.48."

51.   Accordingly, Ralph Lauren has engaged and continues to engage in a common plan and scheme to mislead customers regarding the fabric used to make the V-Neck Sweaters sold as "100% Pima Cotton" and "Pima Cotton" under its Polo Ralph Lauren brand.

C.   Defendant's Violations of the Textile Act and the FTC Act

52.   In addition to calling attention to the Product's raw materials on its labeling and tags to justify a higher price point, Ralph Lauren, like all sellers and manufacturers of textiles like apparel, must comply with the Textile Fiber Products Identification Act ("Textile Act"), 15 U.S.C. §§ 70, *et seq*., and its accompanying Rules and Regulations (16 C.F.R. Part 303).

53.    Sellers have a legal duty under the Textile Act to affix an accurate fiber content identification tag to a product, accurately disclose the fiber content to the same extent on the label of the product, and accurately advertise the fiber content of the product. *See* 15 U.S.C. §70b.

54.    If the real fiber content is different than the labeled amount, the product is misbranded as a matter of law, and importing or retailing such a product is "an unfair and deceptive act or practice" and an "unfair method of competition." *Id*. at §70a.

55.    In furtherance of this regulatory scheme, manufacturers of textile products, like Ralph Lauren, must maintain records sufficient to substantiate the claims on its fiber content tags and labels. See *id*. at §70d.

56.    Any person failing to maintain such records is per se guilty of an unfair method of competition, and an unfair or deceptive act or practice, under the Textile Act. *Id*.; *see* 16 CFR § 303.39; *see also id.* § 303.2(d).[7]

57.    Importantly, these records must document the fiber used through the entire manufacturing chain from acquisition of the raw cotton through production of the finished article and a "guarantee" of fiber content from a supplier is expressly made insufficient for Ralph Lauren by the applicable regulations. *See* 16 CFR §303.39.

58.    On information and belief, Defendant has not and does not maintain the proper documentation to support its 100% Pima Cotton claims.

D.    The Impact of Defendant's Unfair and Deceptive Business Practices

59.    Because Defendant controls the Product's manufacturing, labeling, sales and marketing, Ralph Lauren possesses specialized knowledge regarding the content of the product and is in a superior position to learn about the product.

---

[7] The deceptive acts or practices described in this Paragraph are unlawful under the FTC Act, 15 USC 45(a)(1).

60.    Moreover, the records Ralph Lauren must maintain by law provide Ralph Lauren with actual knowledge of the falsity of the 100% Pima cotton claims.

61.    Thus, Defendant knew, or should have known, or was willfully ignorant of the fact that the 100% Pima cotton claim is false, deceptive, and misleading.

62.    The Product was marketed and sold in a way to deceive and induce, or had the effect of deceiving and inducing, consumers into purchasing the Product.

63.    Plaintiff purchased the Product because she believed it was made from 100% Pima Cotton.

64.    Plaintiff would not have purchased it if she had known it was not 100% Pima Cotton and/or contained less Pima cotton than represented and expected.

65.    Plaintiff has suffered an economic loss proximately and in fact because of her purchase of the Product.

66.    The Product's 100% Pima Cotton claim is deceptive and misleading, and reasonably likely to deceive the public because the Product is made from less than 100% Pima Cotton.

67.    If the Court were to enjoin Ralph Lauren from continuing the conduct complained of above such that its representations were no longer misleading, Plaintiff would consider purchasing the Product in the future.

68.    Class Members continue to rely upon Defendant's false and misleading representations and purchase the Product to their detriment.

<u>Jurisdiction and Venue</u>

69.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2)

70.    Under CAFA, district courts have "original federal jurisdiction over class actions

11

involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

71.   Plaintiff Donna Carter is a citizen of New Jersey.

72.   Plaintiff Donna Carter purchased the Product for approximately eighty dollars ($80) plus tax at the Ralph Lauren Store, Woodbury Common Premium Outlets, 498 Red Apple Ct, Central Valley, NY 10917 in Orange County in or around December 2019.

73.   Defendant Ralph Lauren Corporation is incorporated in Delaware with its principal place of business in New York, New York.

74.   At all relevant times, Defendant, Ralph Lauren Corporation, manufactured, marketed, distributed, and sold various apparel products, including the V-Neck Sweater labeled as "100% Pima Cotton," throughout the State of New York.

75.   "Minimal diversity" exists because plaintiff and defendant are citizens of different states.

76.   Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. 1332(d)(2)(A).

77.   Upon information and belief, sales of the Product and applicable common law and statutory damages cause the amount in controversy to exceed $5 million during the applicable statutes of limitations, exclusive of interest and costs.

78.   Furthermore, Plaintiff alleges that the total number of members of the proposed Plaintiff Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

79.   This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiff's claims arise under the Constitution, laws, or treaties of the United States. Specifically, the interpretation of the TFPIA and its implementing regulations are central to all of the claims

made by Plaintiff.

80.     The need to interpret the TFPIA and its regulations give rise to a federal question.

81.     In the alternative, this Court has subject matter jurisdiction of claims not raising a federal question directly pursuant to 28 U.S.C. § 1367.

82.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) in that Defendant's principal place of business is in this District and it resides in this District, 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the claim occurred in this District, including Plaintiff's purchase of the Product, the marketing, labeling and design decisions regarding the Product were made in this District; Defendant is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District through the distribution and sale of the Product in this District.

83.     Defendant sold—and Plaintiff purchased—the Pima Cotton sweater that are the subject of this action in this District.

84.     This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

<div align="center">Parties</div>

85.     Plaintiff Donna Carter is a citizen of Bergen County, New Jersey who resides at 30 2nd St Apt 407, Hackensack, NJ 07601-2028.

86.     Defendant Ralph Lauren Corporation is incorporated in Delaware with its principal place of business in New York, New York.

87.     During the relevant statutes of limitations, plaintiff purchased the Product within her district and/or State for personal and household use in reliance on the representations of the Product.

88.     Plaintiff bought the Product at or exceeding the above-referenced price because he

liked the product for its intended use and relied upon the tags and/or label claims to expect its material only came from the cotton identified – (100%) Pima Cotton.

89.    Plaintiff Donna Carter purchased the Product on one or more occasions and at one or more locations, including at the Ralph Lauren Store, Woodbury Common Premium Outlets, 498 Red Apple Ct, Central Valley, NY 10917 in Orange County in 2019, for approximately eighty dollars ($80) plus tax.

90.    Plaintiff was deceived by and relied upon the Product's deceptive labeling.

91.    Plaintiff would not have purchased the Product in the absence of Defendant's misrepresentations and omissions.

92.    The Product was worth less than what Plaintiff paid for it and she would not have paid as much absent Defendant's false and misleading statements and omissions.

93.    Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance that Product's labels are consistent with the Product's components.

<u>Class Allegations</u>

94.    Plaintiff incorporates and re-alleges the above paragraphs.

95.    Plaintiff brings this action as a class action pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil procedure.

96.    Plaintiff sues on behalf of herself and a Class defined as:

All persons who have purchased Ralph Lauren Pima Cotton apparel in New York since January 1, 2013 for personal use.

97.    Excluded from the Class are Defendant and any officer, director, employee, legal counsel, firm, trust, corporation, or other entity related to or affiliated with Defendants and the members of the judiciary and their office staff to whom this case may be assigned.

98.    Members of the Class are so numerous and geographically dispersed throughout New

York that individual joinder of all members is impracticable.

99.   Upon information and belief, there are hundreds, if not thousands, of putative Class Members.

100.   Ralph Lauren sells the Product in many locations throughout New York.

101.   All Members of the Class have been subject to and affected by the same practices and policies and common thread of misconduct resulting in injury to Plaintiff and all other members of the Class as described herein.

102.   Numerous questions of law and fact that are common to the members of the Class exist that predominate over questions affecting only individual members, including the following: whether Ralph Lauren's labeling, advertising and/or marketing of the Product is unfair and/or deceptive; whether Ralph Lauren's labeling, advertising and marketing of the Product is likely to deceive a reasonable consumer; whether Ralph Lauren's acts or practices described herein violate FDUTPA; whether Ralph Lauren's conduct with respect to the Product violated the Textile Act; whether Defendant's violation of the Textile Act constitutes a GBL violation; whether the Product was made from Pima Cotton; how much of the Product was made from Pima Cotton; whether Plaintiff and the other members of the Class have sustained some damage as a result of the conduct alleged herein; whether Plaintiff and the other members of the Class are entitled to restitution, declaratory relief, and/or injunctive relief; and, the proper measure of restitution.

103.   Plaintiff's claims are typical of the claims of the Class Members in that Plaintiff and all Class Members purchased the Product and were injured based on Ralph Lauren's respective uniform deceptive and misleading claims in the labeling and advertising of the Product during the Class Period and have sustained damages as a result.

104.   Plaintiff is advancing the same claims and legal theories on behalf of herself and all

other members of the class.

105.   Plaintiff will fairly and adequately represent and protect the interests of the Class and is committed to the vigorous prosecution of this action.

106.   Plaintiff's interests are aligned with the Class and Plaintiff has no interests adverse to the class.

107.   Plaintiff has retained counsel who are competent and experienced in class-action litigation.

108.   There are no difficulties likely to be encountered in the management of this action as a class action that could not be managed by the Court: (a) the advantages of maintaining the action as a class action far outweigh the expense and waste of judicial effort that would result in thousands of separate adjudications of these issues for thousands of Class Members; and (b) class treatment further insures uniformity and consistency in results.

109.   A class action is superior to other available methods for the fair and efficient adjudication of the Class claims herein asserted in that individual claims by Class Members are impracticable as the costs of pursuit far exceed what any one individual Plaintiff or Class member has at stake.

110.   As a result, individual members of the Class have no interest in prosecuting and controlling separate actions. Moreover, it is desirable to concentrate litigation of the claims herein in this forum.

111.   Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate for the Class as a whole.

<u>New York General Business Law ("GBL") §§ 349 & 350,</u>
<u>(Consumer Protection Statute)</u>

112.   Plaintiff incorporates by reference all preceding paragraphs.

113.   Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

114.   Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

115. Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

116.   The amount and proportion of the characterizing component, Pima Cotton, has a material bearing on price and consumer acceptance of the Product.

117.   The tags and/or label gives the impression the Product is made from only Pima Cotton because this is the only cotton identified and the label says "100% Pima Cotton."

118.   Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

119.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

120.   Plaintiff incorporates by reference all preceding paragraphs.

121. Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

122.   The tags and/or label gives the impression the Product has more of the characterizing material than it does.

123.   Defendant had a duty to disclose and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

124.   This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

125.   The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

126.   Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

127.   Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

128.   Plaintiff incorporates by reference all preceding paragraphs.

129.   The Product was manufactured, labeled, and sold by defendant or at its express directions and instructions, and warranted to plaintiff and class members that they possessed substantive, quality, compositional and/or environmental which they did not.

130.   Defendant had a duty to disclose and/or provide non-deceptive identification, description and marketing of the Product.

131.   The tags and/or label gives the impression the Product has more of the characterizing Pima cotton material than it does.

132.   This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

133.   Plaintiff provided notice to defendant by first-class mail and/or certified mail, return

receipt requested prior to this action or will provide notice to defendant, its agents, representatives, retailers, and their employees.

134.  Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product, of the type described here.

135.  The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

136.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

137.  Plaintiff incorporates by reference all preceding paragraphs.

138.  Defendant misrepresented the substantive, quality, compositional and/or environmental attributes of the Product.

139.  The labels and tags omit any qualifying terms that would tell consumers the Product contains less than "100% Pima Cotton."

140.  The representations give the impression the Product has more of the characterizing Pima Cotton than it does.

141.  Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the tags and labels, when it knew its statements were neither true nor accurate and misled consumers.

142.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Unjust Enrichment</u>

143.   Plaintiff incorporates by reference all preceding paragraphs.

144.   Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages, statutory damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   February 10, 2021

<div style="margin-left: 45%;">

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
60 Cutter Mill Rd Ste 409

</div>

Great Neck NY 11021-3104
Tel: (516) 268-7080
Fax: (516) 234-7800
*spencer@spencersheehan.com*

Reese LLP
Michael R. Reese
100 W 93rd St Fl 16
New York NY 10025-7524
Telephone: (212) 643-0500
Fax: (212) 253-4272
*mreese@reesellp.com*
Joel Oster
Of Counsel
Law Offices of Howard W. Rubenstein
4000 North Ocean Drive East Tower 201
Singer Island, FL 33404

1:21-cv-01202
United States District Court
Southern District of New York

Donna Carter, individually and on behalf of all others similarly situated,

                            Plaintiff,

        - against -

Ralph Lauren Corporation,

                            Defendant

## Complaint

```
      Sheehan & Associates, P.C.
       60 Cutter Mill Rd Ste 409
       Great Neck NY 11021-3104
          Tel: (516) 268-7080
          Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  February 10, 2021

                                                      /s/ Spencer Sheehan
                                                      Spencer Sheehan