UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DONNA CARTER, Individually and On
Behalf of All Others Similarly Situated,

Plaintiff,

- against -

RALPH LAUREN CORPORATION,

Defendant.

**MEMORANDUM
OPINION & ORDER**

21 Civ. 1202 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

Plaintiff Donna Carter brings this class action against Defendant Ralph Lauren Corporation ("Ralph Lauren"), pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). (Am. Cmplt. (Dkt. No. 16) ¶ 25) Plaintiff alleges violations of Sections 349 and 350 of the New York General Business Law ("GBL"), breach of warranty under New York law and the Magnuson-Moss Warranty Act ("MMWA"), and negligent misrepresentation, fraud, and unjust enrichment under New York common law. (Id. ¶¶ 58-81)

Defendant Ralph Lauren Corporation has moved to compel arbitration or, in the alternative, to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6). (Def. Mot. (Dkt. No. 21)) Defendant has also moved to strike the Amended Complaint's class allegations. (Def. Br. (Dkt. No. 22) at 31-32)

For the reasons stated below, Ralph Lauren's motion to compel arbitration will be denied, and its motion to dismiss will be granted. Given that the Amended Complaint will be dismissed, the Court will deny as moot Defendant's motion to strike the Amended Complaint's class allegations.

# BACKGROUND

## I.        FACTS

### A.        The Ralph Lauren Polo Cotton Sweaters

Ralph Lauren "manufactures, markets, labels, and sells V-Neck Pullover Sweaters in various colors, purporting to be '100% Pima cotton,' under the Ralph Lauren Polo brand." (Am. Cmplt. (Dkt. No. 16) ¶ 1)

Plaintiff alleges that she purchased the V-Neck Pullover Sweater shown below (the "Sweater") for approximately $80.00, plus tax, at the Ralph Lauren Store, Woodbury Common Premium Outlets, 498 Red Apple Court, Central Valley, New York, in or around December 2019.  (Id. ¶ 8)

The tags attached to the Sweater are shown below:



(Id. ¶¶ 9-10)  The Amended Complaint alleges that "[t]he back collar of the [p]roduct, where consumers know to look to discover what clothing is made of, states 'PIMA COTTON.'"  (Id. ¶

9)  "The required fiber tag, affixed to the interior of the garment, certifies the [p]roduct is not merely 'Pima Cotton' but '100% Pima Cotton.'"  (Id. ¶ 10)

The Amended Complaint further alleges that "[t]he main criteri[on] to identify the type of cotton or other fiber is the fiber length."  (Id. ¶ 3)  "The length of cotton fiber affects its qualities and price – the longer the cotton fiber, the stronger, softer, and more durable the resulting fabric."  (Id. ¶ 4)  These factors "create[] incentives for manufacturers to mix cotton byproducts and shorter fiber cotton with Pima cotton to gain additional profits at the expense of consumers."  (Id. ¶ 5)  The "'Single-Fiber-Test'" adopted by ASTM International can "determine the length and length distribution of manufactured staple fibers in clothing."[1]  (Id. ¶ 6)  The Amended Complaint cites to "ASTM International, D7641, Standard Guide for Textile Fibers," as support for its claim that "Pima cotton (Gossypium barbadense L), an extra-long staple ('ELS') barbadenses, is between approximately 1.2 and 1.44 inches."  (Id. ¶ 7 & n.2)[2]

The Amended Complaint further alleges that laboratory analysis performed on the Sweater, "in accordance with the ASTM D5103 standard, revealed all fibers were shorter than 1.200 inches . . . and shorter than 1.080 inches . . . , below the range for Pima cotton."  (Id. ¶ 13)[3]  Plaintiff's expert, Dr. Sabit Adenur, has reviewed the results of this laboratory analysis.  (Id. ¶ 14)  "Dr. Adenur adjusted for a twenty-five . . . percent reduction of fiber length to account for manufacturing, but this adjustment only results in fifty-three . . . percent of the fibers falling

---

[1]  According to Plaintiff, ASTM International is "a global standards body."  (Am. Cmplt. (Dkt. No. 16) ¶ 6)
[2]  According to Plaintiff's expert, Dr. Sabit Adenur, "ASTM D7641 Standard Guide for Textile Fibers lists the staple length of cotton fibers such as American Upland, Egyptian, American Egyptian, etc."  (Am. Cmplt., Ex. B (Dkt. No. 16-2) at 7)
[3]  According to Plaintiff's expert, Dr. Adenur, the "ASTM D5103 Standard Test Method for Length and Length Distribution of Manufactured Staple Fibers (Single-Fiber Test). . . . is the test method that is suitable to determine the fiber lengths in finished products such as towels."  (Am. Cmplt., Ex. B (Dkt. No. 16-2) at 7)

under the Pima classification." (Id. ¶ 15)  Plaintiff further alleges that Dr. Adenur's

"assumptions are generous and assume that all forty-six . . . fibers that are longer than 1.12

inches are also longer than 1.2 inches, which is unlikely." (Id. ¶ 16)  According to Plaintiff,

"[e]ither way, the percent of Pima cotton used in the [p]roduct is significantly below the

advertised and certified figure," "[t]he [p]roduct is not made entirely from Pima cotton, but

mainly from less expensive shorter cotton fibers or cotton byproduct fibers," and "[n]o

reasonable consumer will expect that clothing advertised as containing '100% Pima Cotton'

would contain significantly less Pima cotton than promised." (Id. ¶¶ 17-19)

   The Amended Complaint goes on to allege that "[r]easonable consumers must and

do rely on a company to honestly identify and describe the components and features of what they

buy." (Id. ¶ 20)  "[Ralph Lauren]'s brand is synonymous with the highest quality, so that when

consumers see '100% Pima Cotton,' they will trust it." (Id. ¶ 37)

   Plaintiff further alleges that (1) "[t]he value of the [p]roduct that [P]laintiff

purchased was materially less than its value as represented by [Ralph Lauren]"; (2) Ralph Lauren

"sold more of the [p]roduct and at higher prices than it would have in the absence of this

misconduct, resulting in additional profits at the expense of consumers"; (3) "[h]ad [P]laintiff

and proposed class members known the truth, they would not have bought the [p]roduct or would

have paid less for it"; and (4) "[t]he [p]roduct is sold for a price premium compared to other

similar products, approximately $80.00 per shirt, a higher price than it would otherwise be sold

for, absent the misleading representations and omissions." (Id. ¶¶ 21-24)

   Plaintiff further alleges that she "has sensitive skin and seeks clothing which

contains higher quality cotton and fabrics." (Id. at 41)  "Plaintiff sought to purchase a product

that contained the amount of Pima cotton promised on the label, and not a significant amount and/or percentage less." (Id. ¶ 42)

The Amended Complaint further alleges that Ralph Lauren "did not disclose accurate and truthful fiber content tags on its Pima cotton products, or on its labeling, and upon information and belief, failed to maintain required records substantiating the fiber content of the [p]roducts at each stage of the manufacturing process." (Id. ¶ 44) "Plaintiff did not, nor could be expected to know, that the [p]roduct's Pima cotton percentage differed significantly from the labeling." (Id. ¶ 45) Plaintiff further alleges that she "would not have purchased the [p]roduct if she knew the representations [about the Pima cotton content] were false and misleading." (Id. ¶ 46) "Plaintiff chose between [Ralph Lauren]'s [p]roduct and other similar products which were represented similarly, but which did not misrepresent their attributes and/or lower-priced products which did not make the claims made by [Ralph Lauren]." (Id. ¶ 47) "The [p]roduct was worth less than what Plaintiff paid and she would not have paid as much absent [Ralph Lauren]'s false and misleading statements and omissions." (Id. ¶ 48)

Finally, the Amended Complaint pleads that Plaintiff "intends to, seeks to, and will purchase the [p]roduct again when she can do so with the assurance that [the] [p]roduct's representations are consistent with its composition." (Id. ¶ 49)

## B.      The Arbitration Provision

According to Ralph Lauren, on November 2, 2016, Plaintiff enrolled in Ralph Lauren's Factory Store Text Message Customer Loyalty Program (the "Loyalty Program"). Plaintiff never opted out of this program. (Bellina Decl. (Dkt. No. 24) ¶¶ 4, 8)

On July 29, 2019, Ralph Lauren "caused a text message to be sent to members of the Loyalty Program in the United States, including [Plaintiff], advising of updates to the Terms and Conditions of the Loyalty Program." (Id. ¶ 5)  The message states:

> PoloFactory:  We're updating our terms to give you more.  Msg freq now varies.  Save NOW with this 20% offer click here:  http://vbs.cm/a67ybV Txt STOP 2end

(Id.)

On July 31, 2019, Ralph Lauren "caused another text message to be sent to members of the Loyalty Program in the United States, including [Plaintiff], reminding such members of updates to the Terms and Conditions of the Loyalty Program." (Id. ¶ 6)  This message states:

> PoloFactory:  Reminder we're updating our terms 2 give u more-msg freq now varies.  SAVE w/this 20% offer http://vbs.cm/V6LzEB Terms http://vbs.cm/y6vzIA STOP2end

(Id.)

According to Defendant, "the text messages sent to [Plaintiff] contained a 'shortened' hyperlink to a copy of [an arbitration provision]." (Id. ¶ 7)  The arbitration provision (see id., Ex. A (Arbitration Clause) (Dkt. No. 24-1) at 2) is entitled "Arbitration Agreement" and reads as follows:

> **You Agree To Submit Any and All Disputes Arising from or Relating to This Agreement or Your Use of this Text Message Service To Binding Individual Arbitration, And You Agree To Give Up Any Right To Represent Other Persons In A Class Action or Similar Proceeding.**

(Id. (emphasis in original))

The arbitration provision further states that

Ralph Lauren Corporation ("Ralph Lauren"), including its subsidiaries, affiliates, agents, employees, predecessors in interest, successors and assigns, and Vibes Media LLC ("Vibes") including its subsidiaries, affiliates, agents, employees, predecessors in interest, successors and assigns, (Ralph Lauren and Vibes will together hereinafter be referred to as "us" or "we") and you agree that any and all

6

disputes or claims relating in any way to any dispute of any nature between you and one or both of us, including but not limited to disputes under the Telephone Consumer Protection Act, and including but not limited to disputes concerning the scope or applicability of this agreement to arbitration ("Disputes"), as well as questions as to the arbitrability of any and all Disputes, and even if the events giving rise to Disputes occurred before this Arbitration Agreement became effective or before you were put on notice of the applicability of this Arbitration Agreement, will be resolved in a confidential, individual arbitration process, and not in court.  The only exceptions to this arbitration agreement are that (i) each of you and we retain the right to sue in small claims court and (ii) each of you and we may bring suit in court against the other to enjoin infringement or other misuse of intellectual property rights.

(Id.)[4]

## II.     PROCEDURAL HISTORY

The Complaint was filed on February 10, 2021 (Cmplt. (Dkt. No. 1)), and the Amended Complaint was filed on July 27, 2021.  (Am. Cmplt. (Dkt. No. 16))  On November 8, 2021, Ralph Lauren moved to compel arbitration or, in the alternative, to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6).  (Def. Mot. (Dkt. No. 21))

## DISCUSSION

## I.     LEGAL STANDARDS

### A.     Motion to Compel Arbitration

Under the Federal Arbitration Act (the "FAA"), an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA provides that a party to an arbitration agreement may petition a district court for "an order directing that . . . arbitration proceed in the manner provided for in such [an] agreement."  9 U.S.C. § 4.  The FAA reflects "a strong federal policy favoring arbitration as an alternative means of dispute resolution."  Hartford Accident &

---

[4] Vibes Media LLC administered Ralph Lauren's Loyalty Program.  (Bellina Decl. (Dkt. No. 24) ¶ 2)

Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001). Given the federal policy favoring arbitration, "doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration." Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC, 645 F.3d 522, 526 (2d Cir. 2011)). However, this "presumption [of arbitrability] does not apply to disputes concerning whether an agreement to arbitrate has been made." Id.

Motions to compel arbitration pursuant to the FAA are considered "under a standard similar to the standard for a summary judgment motion." Kutluca v. PQ N.Y. Inc., 266 F. Supp. 3d 691, 700 (S.D.N.Y. 2017) (citing Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003)). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." Bensadoun, 316 F.3d at 175 (citing 9 U.S.C. § 4). Where, however, "'the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [courts] may rule on the basis of that legal issue and "avoid the need for further court proceedings."'" Meyer v. Uber Techs., Inc., 868 F.3d 66, 74 (2d Cir. 2017) (quoting Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd., 661 F.3d 164, 172 (2d Cir. 2011); Bensadoun, 316 F.3d at 175).

In resolving a motion to compel arbitration, courts consider "'all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits,'" . . . and draw all reasonable inferences in favor of the non-moving party. Id. (first omission in original) (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 155 (2d Cir. 2002); citing Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016)). "A party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." Harrington

8

v. Atl. Sounding Co., Inc., 602 F.3d 113, 124 (2d Cir. 2010) (citing Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 91-92 (2000)).

**B.    Rule 12(b)(6) Motion to Dismiss**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Avenue Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff," id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

Under this standard, a plaintiff is required only to set forth a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft 'to sho[w] that the pleader is entitled to relief.'"  Twombly, 550 U.S. at 557 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).  To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right of relief above the speculative level," id. at 555, and a plaintiff's claims must be "plausible on [their] face," id. at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557).  Moreover, where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," Twombly, 550 U.S. at 558, or

where a plaintiff has "not nudged [her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," id. at 570.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (alteration in original) (quoting Twombly, 550 U.S. at 557).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers, 282 F.3d at 153; Hayden v. Cnty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)).

## III.   ANALYSIS

### A.   Motion to Compel Arbitration

In deciding whether claims are subject to arbitration, courts must determine "(1) whether the parties entered into an agreement to arbitrate; (2) if so, the scope of that agreement; (3) if federal statutory claims are asserted, whether Congress intended those claims to be nonarbitrable; and (4) if some, but not all, claims are subject to arbitration, whether to stay the balance of the proceedings pending arbitration." Begonja v. Vornado Realty Tr., 159 F. Supp.

3d 402, 408-09 (S.D.N.Y. 2016) (citing <u>Guyden v. Aetna, Inc.</u>, 544 F.3d 376, 382 (2d Cir. 2008)).  Here, only the answer to the first question is in dispute.[5]

### 1.   Whether Plaintiff and Ralph Lauren <br> Entered into an Arbitration Agreement

Citing the two July 2019 text messages referenced above, Ralph Lauren argues that it "advised Plaintiff of updates to the terms of the Loyalty Program, and provided a hyperlink to the [alleged] Arbitration Agreement," and that "[a]fter receiving a copy of the [alleged] Arbitration Agreement, Plaintiff did not unsubscribe from the Loyalty Program (and has not unsubscribed since), thus evidencing her assent to the [alleged] Arbitration Agreement." (Def. Br. (Dkt. No. 22) at 16 (citing Bellina Decl. (Dkt. No. 24) ¶¶ 5-8))

Plaintiff counters that "[Ralph Lauren] cannot show [the] '[m]utual manifestation of assent[]' required for a binding contract."  (Pltf. Opp. (Dkt. No. 26) at 16 (quoting <u>Berkson v. Gogo LLC</u>, 97 F. Supp. 3d 359, 388 (E.D.N.Y. 2015); <u>Starke v. SquareTrade, Inc.</u>, 913 F.3d 279, 289 (2d Cir. 2019)))  Plaintiff contends that "the messages were inadequate to have placed Plaintiff on inquiry notice of the arbitration clause."  In this regard, Plaintiff notes that Ralph Lauren represented that "the terms [of the Loyalty Program] were being updated 'to give [her]

---

[5] As to scope, the arbitration provision states that it applies to

> any and all disputes or claims relating in any way to any dispute of any nature between [the consumer] and one or both of [Ralph Lauren or Vibes], including but not limited to disputes under the Telephone Consumer Protection Act, and including but not limited to disputes concerning the scope or applicability of this agreement to arbitration ("Disputes"), as well as questions as to the arbitrability of any and all Disputes, and even if the events giving rise to Disputes occurred before this Arbitration Agreement became effective or before [the consumer] w[as] put on notice of the applicability of this Arbitration Agreement.

(Arbitration Clause (Dkt. No. 24-1) at 2)  Plaintiff does not dispute that, if she agreed to the arbitration provision, her claim would fall within that provision.  (<u>See</u> Pltf. Opp. (Dkt. No. 26) at 12-20)

more.'"  Accordingly, "she had no reason to expect she would be getting less, in terms of waiver

of her right to bring suit against [Ralph Lauren]," and no reason to believe that she was entering

into an arbitration agreement.[6]  (Id. at 18-19 (second alteration in original) (emphasis omitted))

### a.  Applicable Law

In New York,[7] "[i]t is a basic tenet of contract law that, in order to be binding, a

contract requires a 'meeting of the minds' and 'a manifestation of mutual assent.'"  Starke, 913

---

[6]  Plaintiff also argues that the Bellina declaration – in which Ralph Lauren sets forth the factual
background regarding the July 2019 text messages (see Bellina Decl. (Dkt. No. 24)) – should be
disregarded, because Bellina has no personal knowledge of the facts set forth in his declaration.
(Ptlf. Opp. (Dkt. No. 26) at 12-14)

In his declaration, Bellina states that since May 2019 he has been employed by Ralph Lauren,
that his "current title is Senior Director of Retail Marketing, North America," and that in this
capacity he "ha[s] access to information in the normal course of business regarding certain of
[Ralph Lauren]'s membership programs," such as the Loyalty Program.  Bellina also "ha[s]
access to information" regarding the "maintenance of all agreements and policies related to such
programs."  Bellina further represents that "all facts set forth in [his] [d]eclaration are based upon
[his] personal knowledge."  (Bellina Decl. (Dkt. No. 24) ¶¶ 1-3)  While an assertion that one
"has access to information" does not demonstrate that you are knowledgeable about that
information, Bellina's personal knowledge regarding the July 2019 text messages is immaterial.
It is undisputed that the July 2019 text messages were disseminated and that Ralph Lauren was
responsible for their dissemination.  (See id. ¶¶ 5-6; Ptlf. Opp. (Dkt. No. 26) at 12-20)  And it is
these text messages that Defendant relies on in arguing that Plaintiff and Ralph Lauren entered
into an arbitration agreement.  (See Def. Br. (Dkt. No. 22) at 14-17)

Plaintiff also asserts that "the underlying agreement [is] a classic illusory contract."  (Pltf. Opp.
(Dkt. No. 26) at 16)  In exchange for enrolling in the Loyalty Program, however, Plaintiff
received certain special promotional offers.  This Court cannot find on the current record that the
Loyalty Program is an illusory contract.  See Soliman v. Subway Franchisee Advert. Fund Tr.
Ltd., 442 F. Supp. 3d 519, 528 (D. Conn. 2020), ("This was not a one-sided arrangement
whereby [plaintiff] received the benefit of a sales promotion and, but for her acceptance of the
terms and conditions, would otherwise have incurred no cost and conferred no benefit to
[defendant].  Rather, [plaintiff] agreed to accept possibly annoying text messages from
[defendant], and [defendant] presumably expected to receive more sales volume in return."),
aff'd and remanded on other grounds, 999 F.3d 828 (2d Cir. 2021).

[7]  State law governs the inquiry into whether parties agreed to arbitrate, see Meyer, 868 F.3d at
73-74, and "[a] federal court exercising diversity jurisdiction must apply the choice of law
analysis of the forum state."  GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc., 449
F.3d 377, 382 (2d Cir. 2006) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941);

F.3d at 288 (citing Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp., 93 N.Y.2d

584, 589 (1999)); see also Specht v. Netscape Commc'ns Corp., 306 F.3d 17, 29 (2d Cir. 2002)

("Mutual manifestation of assent, whether by written or spoken word or by conduct, is the

touchstone of contract."). "The manifestation of mutual assent must be sufficiently definite to

assure that the parties are truly in agreement with respect to all material terms." Starke, 913 F.3d

at 289. "Generally, courts look to the basic elements of the offer and the acceptance to

determine whether there was an objective meeting of the minds sufficient to give rise to a

binding and enforceable contract." Id.

"Where an offeree does not have actual notice of certain contract terms, he is

nevertheless bound by such terms if he is on inquiry notice of them and assents to them through

conduct that a reasonable person would understand to constitute assent." Id. (emphasis in

---

Gilbert v. Seton Hall Univ., 332 F.3d 105, 109 (2d Cir. 2003)). "The New York Court of
Appeals has held that 'the first step in any case presenting a potential choice of law issue is to
determine whether there is an actual conflict between the laws of the jurisdictions involved.'"
Id. (quoting In re Allstate Ins. Co., 81 N.Y.2d 219, 223 (1993); citing Zurich Ins. Co. v. Shearson
Lehman Hutton, Inc., 84 N.Y.2d 309 (1994)). "In the absence of substantive difference,
however, a New York court will dispense with choice of law analysis; and if New York law is
among the relevant choices, New York courts are free to apply it." Int'l Bus. Machs. Corp. v.
Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004) (citing J. Aron & Co. v. Chown, 231
A.D.2d 426, 647 (1st Dept. 1996); Tronlone v. Lac d'Amiante Du Quebec, Ltee, 297 A.D.2d
528, 528 (1st Dept. 2002), aff'd, 99 N.Y.2d 647 (2003)).

Here, Plaintiff alleges that she is a New Jersey citizen, who made her purchase in New York,
from a corporation that is incorporated in Delaware and has its principal place of business in
New York. (Am. Cmplt. (Dkt. No. 16) ¶¶ 8, 29-30, 33-34, 40) The laws of New Jersey, New
York, and Delaware concerning contract formation do not conflict. See Flores v. Chime Fin.,
Inc., No. 21 Civ. 4735 (RA), 2022 WL 873252, at *4 (S.D.N.Y. Mar. 23, 2022) ("The Court
finds that there is no actual conflict between New York[ or] Delaware[] . . . contract law on the
question of whether parties have assented to a contract."); Beture v. Samsung Elecs. Am., Inc.,
No. Civ. 17-5757 (SRC), 2018 WL 4621586, at *3 (D.N.J. July 18, 2018) ("This Court finds that
there is no conflict between applying New Jersey[] and New York substantive law to contract
formation.") Moreover, the parties cite generally to New York law. Accordingly, this Court will
apply New York law.

original).  "In determining whether an offeree is on inquiry notice of contract terms, New York

courts look to whether the term was obvious and whether it was called to the offeree's attention."

Id.  "This often turns on whether the contract terms were presented to the offeree in a clear and

conspicuous way."  Id.  "In the context of web-based contracts, [courts] look to the design and

content of the relevant interface to determine if the contract terms were presented to the offeree

in [a] way that would put her on inquiry notice of such terms."  Id.  Where terms are presented in

a clear and conspicuous way, users are "on inquiry notice" of those terms, even if "many users

will not bother reading" them.  Meyer, 868 F.3d at 79.

**b.**     **<u>Analysis</u>**

On July 29, 2019, Ralph Lauren sent the following text message to Plaintiff and

other members of its Loyalty Program:

> PoloFactory:  We're updating our terms to give you more.  Msg freq now varies.
> Save NOW with this 20% offer click here:  http://vbs.cm/a67ybV Txt STOP 2end

(Bellina Decl. (Dkt. No. 24) ¶ 5)  And on July 31, 2019, Ralph Lauren sent a similar text

message to Plaintiff and other members of its Loyalty Program:

> PoloFactory:  Reminder we're updating our terms 2 give u more-msg freq now
> varies.  SAVE w/this 20% offer http://vbs.cm/V6LzEB Terms
> http://vbs.cm/y6vzIA STOP2end

(Id. ¶ 6)

According to the Bellina declaration, "the text messages sent to [Plaintiff]

contained a 'shortened' hyperlink to a copy of [the alleged] Arbitration Agreement with [Ralph

Lauren] and Vibes."  (Id. ¶ 7)  While Bellina states that "[t]he full (non-shortened) hyperlink" is

at "https://mp.vibescm.com/c/nfu78e" (id.), he does not assert that this "full" hyperlink was

14

transmitted to or made available to Plaintiff or other members of the Loyalty Program.[8]  Ralph Lauren also has not demonstrated that Plaintiff clicked on any hyperlink, whether "full" or "shortened."

In any event, the July 29, 2019 text message does not provide the terms of the arbitration provision in a "clear and conspicuous way."  See Starke, 913 F.3d at 289.  Although Ralph Lauren claims that the shortened hyperlink contained in this text message links to the arbitration provision (see Bellina Decl. (Dkt. No. 24) ¶ 7), the text of the message does not indicate in any fashion that the hyperlink contains any updated terms that will govern the parties' relationship.  To the contrary, the text that immediately precedes the hyperlink states, "Save NOW with this 20% offer click here."  (Id. ¶ 5)  This text message thus suggests that clicking the hyperlink will lead to a "20% offer," and not to any updated terms governing the parties' relationship, much less an arbitration agreement.

The July 31, 2019 text message suffers from the same defects.  While this message also says that Ralph Lauren is "updating [its] terms 2 give u more," what follows is the language "SAVE w/this 20% offer" and a hyperlink.  (Id. ¶ 6)  The text message ends with "Terms" and another hyperlink (id.), but there is no hint that the second hyperlink contains an arbitration provision, or any other term governing the parties' relationship, as opposed to the "Terms" governing the "20% offer."

The Second Circuit has stated that

> [a]lthough it is axiomatic that no express agreement (such as clicking on a box indicating "I agree," which is often referred to as a "clickwrap agreement") is necessary to establish reasonable conspicuousness under the law, [the court has] emphasized the importance of clearly signaling to the consumer in some fashion

---

[8]  In her opposition brief, Plaintiff asserts that "all three of the 'shortened' hyperlinks Plaintiff allegedly received on July 29 and July 31, 2019, return invalid error messages when clicked." Plaintiff provides no citation for this factual assertion, however.  (See Pltf. Opp. (Dkt. No. 26) at 17)

15

that, by continuing with the transaction or by using a website, she will be agreeing
to the terms contained in an accompanying hyperlink.

Soliman v. Subway Franchisee Advert. Fund Tr., Ltd., 999 F.3d 828, 837 (2d Cir. 2021).

Here, the July 2019 text messages did not "clearly signal[]" to Plaintiff that, by
continuing her enrollment in the Loyalty Program, "she [would] be agreeing to the terms
contained in [the] accompanying hyperlink."  The text messages instead signaled to Plaintiff that
she had the opportunity to accept a "20% offer."  See Soliman, 999 F.3d at 838 (alteration in
original) ("The importance of signaling that a consumer is about to agree to something is even
more pronounced in the context of a promotional offer for a coupon, because a reasonable
consumer could easily conclude that any vague reference to '[t]erms and conditions' (assuming
the consumer noticed the reference at all) simply contained details about where and how the
coupon could be used, as opposed to the consumer understanding that she was affirmatively
agreeing to anything (much less to arbitration of any disputes).").

Moreover, Plaintiff enrolled in the Loyalty Program on November 2, 2016
(Bellina Decl. (Dkt. No. 24) ¶ 4), and did not receive the text messages on which Ralph Lauren
relies until July 29 and 31, 2019.  (Id. ¶¶ 5-6)  Because Plaintiff did not receive the text messages
"simultaneously" with her enrollment in the Loyalty Program, Ralph Lauren has not shown a
"connecti[on] [between] the contractual terms [and] the services to which they apply."  Meyer,
868 F.3d at 78; see also Schnabel v. Trilegiant Corp., 697 F.3d 110, 126 (2d Cir. 2012) (citing
Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 555-58 (1st Cir. 2005)) ("[T]hat
someone has received an email does not without more establish that he or she should know that
the terms disclosed in the email relate to a service in which he or she had previously enrolled and
that a failure affirmatively to opt out of the service amounts to assent to those terms.").

16

The cases Ralph Lauren cites in support of its argument that the July 2019 text messages created a binding agreement to arbitrate (see Def. Br. (Dkt. No. 22) at 16-17) are not on point.  In <u>Sacchi v. Verizon Online LLC</u>, plaintiff "received affirmative notice [via email] of the amendments [to the Terms and Conditions] – specifically, the addition of the Arbitration Clause – on at least three occasions, in addition to the posting of the amendments to the website," and "[e]ach of these notices provided links to both the amended terms of service itself, as well as an information page explaining the new dispute resolution procedures."  No. 14 Civ. 423 (RA), 2015 WL 765940, at *7 (S.D.N.Y. Feb. 23, 2015).  Moreover, "each of the notices specifically stated that '[b]y continuing to use the services after the date of this notice, you accept and agree to abide by the revised terms.'"  <u>Id.</u> (alteration in original).  "After each notice, [p]laintiff continued to use [defendant's] services, thereby accepting the revised terms, including the arbitration clause."  <u>Id.</u>

And in <u>Pincaro v. Glassdoor, Inc.</u>, an email and hyperlinked terms informed users of defendant's services that "the updated [t]erms would become effective in thirty days and users should delete their account if they did not want to be subject to the updated terms."  No. 16 Civ. 6870 (ER), 2017 WL 4046317, at *6 (S.D.N.Y. Sept. 12, 2017).  "Neither of the [p]laintiffs opted out of arbitration or deleted their accounts."  <u>Id.</u>  Moreover, the email containing the terms of use "indicated that the entire policy could be found 'here[,'] with the word 'here' being underlined and in blue."  <u>Id.</u>  "[T]he email further highlighted certain notable changes in the policy, including that [defendant had] 'updated [its] Dispute Resolution section' to 'expand[ ] the arbitration provision.'"  <u>Id.</u> (third and fourth alterations in original).

17

Here – unlike in <u>Sacchi</u> and <u>Pincaro</u> – the text messages did not state that the updated terms applied to the recipient's continued membership in the Loyalty Program, much less that the updated terms included an arbitration agreement.

In sum, Ralph Lauren has not shown that Plaintiff agreed to the arbitration provision now proffered. Accordingly, Ralph Lauren's motion to compel arbitration will be denied.

**B.**     **Motion to Dismiss**

Ralph Lauren contends that "[e]ach of Plaintiff's five causes of action fail to state a claim because Plaintiff has not pled sufficient facts to raise a plausible inference that [Ralph Lauren] made any misrepresentation concerning the [p]roduct or that she suffered any injury as a result of the alleged misrepresentation." (Def. Br. (Dkt. No. 22) at 19) Defendant also contends that Plaintiff lacks standing to seek injunctive relief. (Def. Reply (Dkt. No. 25) at 15)

**1.**     **Whether Plaintiff Has Standing to Seek Injunctive Relief**[9]

**a.**     **Applicable Law**

"A plaintiff seeking to represent a class must personally have standing." <u>Nicosia</u>, 834 F.3d at 239. "Plaintiffs lack standing to pursue injunctive relief where they are unable to

---

[9] Ralph Lauren does not address standing in its opening brief. (<u>See</u> Def. Br. (Dkt. No. 22)) In her opposition brief, Plaintiff points out that Ralph Lauren's "motion fails to address Plaintiff's request for injunctive relief," that "courts typically hold that '[i]ssues not sufficiently argued in the briefs are considered waived,'" and that "[s]hould [Ralph Lauren] belatedly seek dismissal of Plaintiff's injunctive relief claim in its Reply, it is estopped from doing so." (Pltf. Opp. (Dkt. No. 26) at 32 (first alteration in original) (quoting <u>Norton v. Sam's Club</u>, 145 F.3d 114, 117 (2d Cir. 1998); citing <u>NML Cap., Ltd. v. Republic of Arg.</u>, No. 05 Civ. 2434 (TPG), 2009 WL 1528535, at *1 (S.D.N.Y. May 29, 2009))) Plaintiff then goes on to argue that Ralph Lauren "cannot dispute that Plaintiff has standing to seek injunctive relief because she 'intends to, seeks to, and will purchase the [p]roduct again when she can do so with the assurance that [the] [p]roduct's representations are consistent with its composition.'" (<u>Id.</u> (quoting Am. Cmplt. (Dkt. No. 16) ¶ 49))

establish a 'real or immediate threat' of injury." Id. (quoting City of Los Angeles v. Lyons, 461

U.S. 95, 111-12 (1983); citing Shain v. Ellison, 356 F.3d 211, 215 (2d Cir. 2004)).  "In a

deceptive business practices action under GBL [Sections] 349 and 350, the Second Circuit has

determined that absent an intent to 'purchase the offending product in the future,' a plaintiff

lacks standing to seek injunctive relief."  Yee Ting Lau v. Pret A Manger (USA) Ltd., No. 17

Civ. 5775 (LAK), 2018 WL 4682014, at *2 (S.D.N.Y. Sept. 28, 2018) (quoting Kommer v.

Bayer Consumer Health, 710 Fed. App'x 43, 44 (2d Cir. 2018) (summary order)).

### b.    Analysis

　　　In the Amended Complaint, Plaintiff alleges that she "would not have purchased

the [p]roduct if she knew the representations were false and misleading," and that she "intends

to, seeks to, and will purchase the [p]roduct again when she can do so with the assurance that

[p]roduct's representations are consistent with its composition."  (Am. Cmplt. (Dkt. No. 16) ¶¶

46, 49)  These allegations are not sufficient to demonstrate standing for purposes of seeking

injunctive relief.  See Campbell v. Whole Foods Mkt. Grp., Inc., 516 F. Supp. 3d 370, 395

---

In its reply brief, Ralph Lauren argues that "Plaintiff is not entitled to injunctive relief," given
that she "is not at risk of being harmed again in the future[,] because she now has the information
she claims to have lacked when she made her initial purchase."  (Def. Reply (Dkt. No. 25) at 15)

Having raised and briefed standing, Plaintiff cannot object to this Court's consideration of that
issue.  "'[R]eply papers may properly address new material issues raised in the opposition papers
so as to avoid giving unfair advantage to the answering party.'"  Bayway Refin. Co. v.
Oxygenated Mktg. & Trading A.G., 215 F.3d 219, 226-27 (2d Cir. 2000) (quoting Litton Indus.,
Inc. v. Lehman Bros. Kuhn Loeb Inc., 767 F. Supp. 1220, 1235 (S.D.N.Y. 1991), rev'd on other
grounds, 967 F.2d 742 (2d Cir. 1992), as amended (Sept. 23, 1992)).  Moreover, standing goes to
this Court's subject matter jurisdiction, which is a matter that this Court must consider.  See
Rogers v. LVNV Funding, LLC, No. 21 Civ. 796 (ENV) (RLM), 2022 WL 2292836, at *2
(E.D.N.Y. June 24, 2022) (citing Cent. States Se. & Sw Areas Health and Welfare Fund v.
Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 197-98 (2d Cir. 2005); Hillside Metro
Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n, 747 F.3d 44, 48 (2d Cir. 2014)) ("When a
plaintiff lacks Article III standing, a court lacks subject matter jurisdiction to hear his claim.").

(S.D.N.Y. 2021) ("Plaintiff says that she won't buy the product if the label remains misleading. If she does purchase the product again in the future, she will not be harmed in a similar way, because any future purchase will be made with knowledge of the product's ingredients, and because she will only purchase the product if the allegedly misleading representations of which she complains are fixed.  Therefore, Plaintiff lacks standing."); see also Buonasera v. Honest Co., Inc., 208 F. Supp. 3d 555, 564-65 (S.D.N.Y. 2016) (first alteration in original) (allegation that "'[i]f [defendant]'s products were reformulated such that its representations were truthful, Plaintiff would consider purchasing [defendant]'s products in the future'" is "insufficient to allege future injury").

Because Plaintiff has not plausibly alleged "an intent to 'purchase the offending product in the future,'" she lacks standing to seek injunctive relief.  See Yee Ting Lau, 2018 WL 4682014, at *2 (quoting Kommer, 710 Fed. App'x at 44).  Accordingly, her claim for injunctive relief will be dismissed.

### 2.    GBL Sections 349 and 350 Claim

Ralph Lauren argues that "Plaintiff's GBL claim, and her related common law claims, fail because she does not allege that the label was materially misleading or that she suffered a cognizable injury."  (Def. Br. (Dkt. No. 22) at 19)

### a.    Applicable Law

GBL Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce," while GBL Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce."  N.Y. GBL §§ 349, 350.

To state a claim under either section, "'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'"  Wynn v. Topco Assocs.,

LLC, No. 19 Civ. 11104 (RA), 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (quoting

Orlander v. Staples, Inc., 802 F.3d 289, 300 (2d Cir. 2015)).  To survive a motion to dismiss,

"'[p]laintiffs must do more than plausibly allege that a 'label might conceivably be

misunderstood by some few consumers.'"  Twohig v. Shop-Rite Supermarkets, Inc., 519 F.

Supp. 3d 154, 160 (S.D.N.Y. 2021) (alteration in original) (quoting Sarr v. BEF Foods, Inc., No.

18 Civ. 6409 (ARR) (RLM), 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020)).  A plaintiff

must instead "'plausibly allege that a significant portion of the general consuming public or of

targeted customers, acting reasonably in the circumstances, could be misled.'"  Id. (quoting Sarr,

2020 WL 729883, at *3).  Finally, "[a]lthough the question of whether a business practice or

advertisement is misleading to the reasonable consumer is generally a question of fact, . . . it is

'well settled that a court may determine as a matter of law that an allegedly deceptive

advertisement would not have misled a reasonable consumer.'"  Wynn, 2021 WL 168541, at *2

(quoting Hidalgo v. Johnson & Johnson Consumer Companies, Inc., 148 F. Supp. 3d 285, 295

(S.D.N.Y. 2015); Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013)).

          "When analyzing whether a label is deceptive, courts do not view the label in

isolation.  Instead, '[c]ourts view each allegedly misleading statement in light of its context on

the product label or advertisement as a whole.'"  Pichardo v. Only What You Need, Inc., No. 20

Civ. 493 (VEC), 2020 WL 6323775, at *2 (S.D.N.Y. Oct. 27, 2020) (quoting Wurtzburger v.

Kentucky Fried Chicken, No. 16 Civ. 8186 (NSR), 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13,

2017)).  "If a plaintiff alleges that an element of a product's label is misleading, but another

portion of the label would dispel the confusion, the court should ask whether the misleading

element is ambiguous.  If so, the clarification can defeat the claim."  Davis v. Hain Celestial

Grp., Inc., 297 F. Supp. 3d 327, 334 (E.D.N.Y. 2018).

As to cognizable injury, "[n]umerous courts in this Circuit have "found sufficient a plaintiff's general allegation that she would not have paid a price premium but for the defendant's misrepresentations.'" Colpitts v. Blue Diamond Growers, 527 F. Supp 3d 562, 578 (S.D.N.Y. 2021) (quoting Rodriguez v. Hanesbrands Inc., No. 17 Civ. 1612 (DLI) (RLM), 2018 WL 2078116, at *5 (E.D.N.Y. Feb. 20, 2018), report and recommendation adopted, 2018 WL 1686105 (E.D.N.Y. Mar. 30, 2018)); see also id. (first alteration in original) (allegation that "[h]ad plaintiff and class members known the truth, they would not have bought the [p]roduct or would have paid less for it" sufficient to allege injury under N.Y. GBL Sections 349 and 350); Ackerman v. Coca-Cola Co., No. CV-09-0395 (JG) (RML), 2010 WL 2925955, at *23 (E.D.N.Y. July 21, 2010) ("Injury is adequately alleged under GBL [Sections] 349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations.") (collecting cases). A plaintiff may also "allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." Orlander, 802 F.3d at 302. Finally, the complaint need not specify the exact amount of price premium the plaintiffs paid. See Izquierdo v. Panera Bread Co., 450 F. Supp. 3d 453, 465 (S.D.N.Y. 2020) ("Plaintiff's contention that the [product] 'had significantly less value than it warranted[]' . . . constitutes a 'classic price premium theory of injury' that is 'plausible and cognizable.'") (citing Irvine v. Kate Spade & Co., No. 16 Civ. 7300 (JMF), 2017 WL 4326538, at *5 (S.D.N.Y. Sept. 28, 2017)).

### b.   Whether Materially Misleading Statements Are Adequately Alleged

#### i.   The Parties' Arguments

Ralph Lauren contends that "Plaintiff's allegation that consumers would be misled by the [p]roduct's label is implausible and should be rejected." (Def. Br. (Dkt. No. 22) at

20)  According to Ralph Lauren, "Plaintiff alleges that she purchased a sweater labeled as '100% Pima Cotton' . . . , yet the product tag and fiber content label reproduced in her Complaint do not say that."  Instead, "[t]he tag sewn into the neck of the [p]roduct – where Plaintiff alleges that 'consumers know to look to discover[] what clothing is made of' – simply states 'PIMA COTTON.'"  And "while the fiber content tag sewn into the side seam of the Product states '100% COTTON (PIMA) /COTON/COTONE['] . . . , Plaintiff does not allege that she (or other consumer[s]) looked at the side seam tag to determine fabric content."  (Id. (citing Am. Cmplt. (Dkt. No. 16) ¶¶ 1, 9-10))[10]

As to the Amended Complaint's allegation that Plaintiff "has sensitive skin and seeks clothing which contains higher quality cotton and fabrics" (see Am. Cmplt. (Dkt. No. 16) ¶ 41), Defendant argues that "Plaintiff points to no statement by [Ralph Lauren] concerning the suitability of the [p]roduct for persons with sensitive skin," and "Plaintiff's proffered subjective interpretation of '100% Pima Cotton' (that it will be suitable for persons with sensitive skin) cannot be imputed to the objective reasonable consumer."  (Def. Br. (Dkt. No. 22) at 21)  And even if "'100% Pima Cotton' could reasonably be construed as being suitable for sensitive skin, Plaintiff has not alleged the falsity of such a statement," because "[s]he has not offered any allegations that the [p]roduct caused irritation or was not suitable for her skin."  (Id.)

Finally, Ralph Lauren argues that "the TexTest Reports that Plaintiff relies upon not only fail to support her claims, but they affirmatively disprove them."  (Id.)  According to

---

[10]  At various points, Defendant confusingly cites the Complaint for language that only appears in the Amended Complaint, and addresses language in the Complaint that does not appear in the Amended Complaint.  (See, e.g., Def. Br. (Dkt. No. 22) at 20-21)  While the Court has considered inconsistencies between the two pleadings, Defendant's motion to dismiss must be directed at what is pled in the Amended Complaint, which has superseded the Complaint.  See Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

Defendant, "[b]oth the original and Revised TexTest Reports reflect an average fiber length of 0.856 inches," and "Plaintiff's expert, Dr. Adanur, explains that cotton fibers are shortened by 25% during the manufacturing process, and that this reduction 'should be taken into account' when interpreting the results of such a test." (Id. at 21-22 (quoting Am. Cmplt., Ex. B (Dkt. No. 16-2) at 6-10, 13))  Because "the average fiber length of 0.856 inches must be adjusted by 25%, [the] resulting . . . pre-manufacturing average [length is] 1.141 inches." (Id. at 22)  "The adjusted average fiber length (1.141 inches) falls squarely within the range actually provided in ASTM D7641 [(1.125 to 1.625 inches)], not only rendering Plaintiff's allegations implausible, but affirmatively demonstrating that the [p]roduct is, in fact, made of 100% Pima cotton." (Id.)[11]

In response to Defendant's argument about the Sweater's labels, Plaintiff points out that the "PIMA COTTON" neck label and the interior fiber tag "100% Pima Cotton" both "tell[] consumers that only Pima cotton was used." (Pltf. Opp. (Dkt. No. 26) at 20 (emphasis omitted))  Plaintiff also contend that Defendant's justifiable reliance argument concerning the labels is misplaced, because "'[j]ustifiable reliance by the plaintiff is not an element of the statutory claim' under GBL [Sections] 349 and 350."  Plaintiff further contends that, in any event, the Amended Complaint adequately "allege[s] reliance, [because it pleads that Plaintiff] 'sought to purchase a product that contained the amount of Pima cotton promised on the label, and not a significant amount and/or percentage less.'" (Id. at 21-22 (quoting Am. Cmplt. (Dkt.

---

[11]  Defendant also argues that "the TexTest results are inherently unreliable for a number of reasons," including that "Plaintiff appears to have used the [p]roduct for at least one year before her counsel tested its fiber length," and "[t]he passage of time – and the use, washing, and drying apparent from the photographs in the Amended Complaint – render the TexTest Reports insufficient to raise a plausible inference that [Ralph Lauren]'s representations about the Pima cotton content of the [p]roduct are false." (Def. Br. (Dkt. No. 22) at 22)

No. 16) ¶ 45; citing Def. Br. (Dkt. No. 22) at 20; <u>Koch v. Acker, Merrall & Condit Co.</u>, 18

N.Y.3d 940, 941-42 (2012)))

Plaintiff further argues that she "satisfied the materiality requirement by

describing how the 'length of cotton fiber affects its qualities and price – the longer the cotton

fiber, the stronger, softer, and more durable the resulting fabric.'" (<u>Id.</u> at 22 (quoting Am.

Cmplt. (Dkt. No. 16) ¶¶ 4, 60))

Plaintiff complains that Ralph Lauren "distorts the ASTM Standard for Pima

cotton, by claiming its range of fiber length [for Pima cotton] is between '1.125 to 1.625.'" (<u>Id.</u>

at 23 (quoting Def. Br. (Dkt. No. 22) at 21)) According to Plaintiff, "[w]hile Pima cotton is a

type of 'extra-long staple ("ELS") barbadenses,' 'between approximately 1.2 and 1.44 inches,' it

does not logically follow that all ELS barbadenses are Pima cotton." (<u>Id.</u> at 23 (emphasis

omitted) (quoting Am. Cmplt. (Dkt. No. 16) ¶ 7)) "Dr. Adenur's Report distinguishes between

the types of ELS barbadenses, noting that the 'average fiber length of Pima cotton is 1.3125

inch[es].'" (<u>Id.</u> (quoting Am. Cmplt., Ex. B (Dkt. No. 16-2) at 4)) And while "Defendant claims

that an upward adjustment of the average fiber length, 0.856 inches by 25%, results in an average

fiber length of '. . . 1.141 inches, which falls squarely within the ASTM range for Pima cotton

referenced in the Complaint,'" Ralph Lauren "fail[s] to recognize that Pima cotton is a

[particular] type of ELS barbadenses," with an average length of 1.2 to 1.44 inches. (<u>Id.</u> at 23-24

(quoting Def. Br. (Dkt. No. 22) at 11; Cmplt. (Dkt. No. 1) ¶ 50))

Finally, in response to Ralph Lauren's "argument that 'the TexTest results are

inherently unreliable,'" Plaintiff contends that Ralph Lauren's "requirement that 'the plaintiff

[needs to] disprove defense theories at the motion to dismiss stage' is the opposite of the legal

standard." (<u>Id.</u> at 22-23 (quoting Def. Br. (Dkt. No. 22) at 22; <u>Mycone Dental Supply Co., Inc.</u>

v. Creative Nail Design, Inc., No. 11-4380 (JBS/KMW), 2012 WL 3599368, at *5 (D.N.J. Aug.

17, 2012); citing Howe v. Burwell, No. 2:15-CV-6, 2015 WL 4479757, at *15 (D. Vt. July 21,

2015)))

### ii.   **Analysis**

The Amended Complaint's claim that the Sweater does not contain 100% Pima

cotton is founded on the allegation that "Pima cotton (Gossypium barbadense L), an extra-long

staple ('ELS') barbadenses, is between approximately 1.2 and 1.44 inches." (Am. Cmplt. (Dkt.

No. 16) ¶ 7) The Amended Complaint cites laboratory analysis and an expert report in support

of its claim that all fibers from the Sweater that were analyzed "were shorter than 1.200 inches

. . . below the range for Pima cotton." (Id. ¶¶ 13-14)

In support of the assertion that Pima cotton fibers "are between approximately 1.2

and 1.44 inches [long]," the Amended Complaint cites to "ASTM International, D7641,

Standard Guide for Textile Fibers." (Id. ¶ 7 n.2) Because ASTM D7641 is cited in the

Amended Complaint and is thus incorporated by reference, this Court has considered its

provisions in resolving Defendant's motion to dismiss.[12] See Int'l Audiotext Network, Inc. v.

Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (alteration in original) (quoting Cortec

Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991)) ("'[T]he complaint is deemed

to include any written instrument attached to it as an exhibit or any statements or documents

incorporated in it by reference.'"); Helprin v. Harcourt, Inc., 277 F. Supp. 2d 327, 330-31

(S.D.N.Y. 2003) ("To be incorporated by reference, the Complaint must make a clear, definite

and substantial reference to the documents.").

---

[12] Ralph Lauren has submitted ASTM D7641 in connection with its motion to dismiss. (See
Metzinger Decl., Ex. A (Dkt. No. 23-1))

ASTM D7641 does not reference "Pima cotton," much less state that Pima cotton fibers invariably fall within a range of 1.2 and 1.44 inches.  (See Metzinger Decl., Ex. A (Dkt. No. 23-1))  Moreover, neither the laboratory analysis nor the expert's report attached to the Amended Complaint (see Am. Cmplt., Exhs. A, B (Dkt. Nos. 16-1, 16-2)) states that Pima cotton fibers invariably fall within a range of 1.2 and 1.44 inches.

Given these circumstances, and even assuming arguendo that the laboratory test discussed in the Amended Complaint demonstrates that the analyzed cotton fibers taken from the Sweater are shorter than 1.2 inches, the Amended Complaint does not plausibly allege that Defendant falsely represented that the Sweater contains 100% Pima cotton.  Accordingly, the Amended Complaint's GBL Sections 349 and 350 claim will be dismissed.

This ruling requires that Plaintiff's remaining claims for breach of warranty, negligent misrepresentation, fraud, and unjust enrichment likewise be dismissed, because each claim is founded on the factual allegation that Defendant misrepresented that the Sweater contains 100% Pima cotton.  (See Am. Cmplt. (Dkt. No. 16) ¶¶ 64, 71, 76, 81))  As discussed below, however, each of the remaining claims also fails for separate and independent reasons.

### 3.    <u>Breach of Warranty Claims</u>

Ralph Lauren argues that "Plaintiff's failure to provide timely notice of [Ralph Lauren's] alleged breach of warranty before seeking a remedy in court requires dismissal of her claims."  (Def. Br. (Dkt. No. 22) at 25-26 (emphasis omitted))  In this regard, Ralph Lauren contends that an alleged January 20, 2021 notice letter Plaintiff cites in her opposition brief "is not referenced in or attached to the Amended Complaint," and that – in any event – "[a]ll [that] Plaintiff allege[s] [in the Amended Complaint is] that she 'provided or will provide notice to defendant' . . . , which is insufficient."  (Def. Reply (Dkt. No. 25) at 12 (quoting Am. Cmplt. (Dkt. No. 16) ¶ 67))  Finally, Defendant argues that the alleged notice letter, "assuming it was

sent on January 20, 2021, was untimely given that it was sent thirteen months after Plaintiff purchased the [p]roduct." (Id. (emphasis omitted))

### a.   **Applicable Law**

"[I]n order to assert a breach of express warranty claim under New York law, 'a buyer must provide the seller with timely notice of the alleged breach of warranty.'" Lugones v. Pete & Gerry's Organic, LLC, 440 F. Supp. 3d 226, 244 (S.D.N.Y. 2020) (quoting Quinn v. Walgreen Co., 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013)); see also N.Y. U.C.C. § 2-607(3)(a) ("[T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."). "The U.C.C.'s notice requirement also applies to claims for breach of implied warranty." Campbell, 516 F. Supp. 3d at 392.

"The [Magnuson Moss Warranty Act "MMWA"] makes a warrantor directly liable to a consumer for breach of a written warranty." Bynum v. Fam. Dollar Stores, Inc., 592 F. Supp. 3d 304, 315 (S.D.N.Y. 2022) (citing Wilbur v. Toyota Motor Sales, U.S.A., Inc., 86 F.3d 23, 26 (2d Cir. 1996)); see also 15 U.S.C. § 2310(d)(1). "The MMWA does not, however, create additional bases for recovery under federal law, but rather allows a consumer to recover damage under existing state law." Meserole v. Sony Corp. of Am. Inc., No. 08 Civ. 8987 (RPP), 2009 WL 1403933, at *10 (S.D.N.Y. May 19, 2009) (citing Diaz v. Paragon Motors of Woodside, Inc., 424 F. Supp. 2d 519, 540 (E.D.N.Y. 2006)).

### b.   **Analysis**

Plaintiff asserts in her opposition brief that "[o]n January 20, 2021, [she] mailed a notice letter to [Ralph Lauren]'s corporate headquarters, via Certified Mail, with a duplicate copy sent by First-Class Mail," and that "[Ralph Lauren]'s in-house counsel responded to

Plaintiff's pre-suit notice on February 10, 2021, several hours after the Complaint was filed, and before he was aware of the filing." (Pltf. Opp. (Dkt. No. 26) at 26)  The Amended Complaint does not contain these factual allegations, and instead merely states that "Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees." (Am. Cmplt. (Dkt. No. 16) ¶ 67)

   In Hoffmann v. Kashi Sales, L.L.C., plaintiff asserted in the complaint's breach of warranty claim that "he provided or will provide notice to defendant, its agents, representatives, retailers, and their employees."  No. 21 Civ. 9642 (VB), 2022 WL 17823171, at *6 (S.D.N.Y. Dec. 20, 2022) (quotations omitted).  In finding this allegation inadequate to demonstrate notice, the court noted that "'[i]t is well settled that such allegations are insufficient to indicate proper notice, or to avoid dismissal.'"  (Id. (quoting Devey v. Big Lots, Inc., No. 21 Civ. 6688L, 2022 WL 6827447, at *6 (W.D.N.Y. Oct. 12, 2022)); see also Campbell, 516 F. Supp. 3d at 391 (finding the same "allegation . . . insufficient to show that the buyer provided timely notice of the alleged breach [because] the statement is wholly equivocal.  It does not allege that notice has been provided, only that Plaintiff 'provided or will provide' notice.  If Plaintiff had provided notice, she could have written that, rather than pleading, in essence, both that she did provide notice, and that she did not do so but will do so in the future").  Accordingly, the Amended Complaint does not plead facts sufficient to demonstrate that the notice element of a breach of express warranty or implied warranty of merchantability claim has been satisfied.

   "Because Plaintiff has not pled a state law claim of express or implied warranty, [her] MMWA claim fails."  Bynum, 592 F. Supp. 3d at 315; see also Hoffmann, 2022 WL 17823171, at *7  ("Because plaintiff's warranty claims are dismissed, the MMWA claims must also be dismissed."); Meserole, 2009 WL 1403933, at *10 ("[B]ecause Plaintiffs have not

alleged a state law violation of either an express or implied warranty, their claim under the

MMWA is dismissed."). "[P]laintiff's claim under the MMWA 'stand[s] or fall[s]' with [her]

state-law warranty claims." <u>Hoffmann</u>, 2022 WL 17823171, at *7 (second and third alterations

in original) (citing <u>Brady v. Basic Rsch., L.L.C.</u>, 101 F. Supp. 3d 217, 234 (E.D.N.Y. 2015)).

Because the Amended Complaint does not sufficiently plead any warranty claim,

Ralph Lauren's motion to dismiss the breach of warranty claims will be granted.[13]

### 4.   Negligent Representation Claim

Defendant contends that, "[i]n addition to Plaintiff's failure to allege [Ralph

Lauren]'s delivery of allegedly incorrect information, Plaintiff fails to allege the existence of a

special or privity-like relationship with [Ralph Lauren]," as is required to state a claim for

negligent representation.  (Def. Br. (Dkt. No. 22) at 29)

Plaintiff counters that, "[u]nder New York law, '"contractual privity," is sufficient

to establish a special relationship,' and because Plaintiff purchased the [p]roduct 'at the Ralph

Lauren [s]tore,' and not from a third-party, this element is satisfied."  (Pltf. Opp. (Dkt. No. 26) at

28 (quoting <u>King Cnty. v. IKB Deutsche Industriebank AG</u>, 863 F. Supp. 2d 288, 306-07

(S.D.N.Y. 2012); Am. Cmplt. (Dkt. No. 16) ¶ 40))  Plaintiff further contends that "[t]he other

elements of this claim are satisfied because the [p]roduct was not '100% Pima Cotton.'"  (<u>Id.</u>

(quoting Am. Cmplt. (Dkt. No. 16) ¶ 1))

---

[13]  Given that the Amended Complaint does not adequately plead notice, this Court does not
reach Defendant's remaining arguments for dismissal of the warranty claims.  (<u>See</u> Def. Br. (Dkt.
No. 22) at 26 (alteration in original) (quoting <u>Szymczak v. Nissan N. Am., Inc.</u>, No. 10 Civ.
7493, 2011 WL 7095432, at *10 (S.D.N.Y. Dec. 16, 2011)) (arguing that "Plaintiff's implied
warranty claim fails as a matter of law because she did not 'allege the sweater was "not fit for the
ordinary purpose for which it [was] to be used"'"); <u>id.</u> at 26-27 (citing 15 U.S.C. §§
2310(d)(1)(B), (d)(3)) (arguing that "[a] consumer pursuing a MMWA claim on behalf of a
putative class must satisfy certain requirements, including having at least 100 named co-
plaintiffs")))

### a.   Applicable Law

To plead negligent misrepresentation under New York law, a plaintiff must allege

that

> "(1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment."

Anschutz Corp. v. Merrill Lynch & Co., Inc., 690 F.3d 98, 114 (2d Cir. 2012) (quoting Hydro

Invs., Inc. v. Trafalgar Power Inc., 227 F.3d 8, 20 (2d Cir. 2000)).  In assessing whether a

plaintiff has adequately alleged a "special relationship," courts consider "whether the person

making the representation held or appeared to hold unique or special expertise; whether a special

relationship of trust or confidence existed between the parties; and whether the speaker was

aware of the use to which the information would be put and supplied it for that purpose."

Kimmell v. Schaefer, 89 N.Y.2d 257, 264 (1996).  "This [special relationship] requirement

carries extra weight '[i]n the commercial context,' where 'a closer degree of trust between the

parties than that of the ordinary buyer and seller is required.'"  Colpitts, 527 F. Supp. 3d at 587

(second alteration in original) (quoting Stoltz v. Fage Dairy Processing Indus., S.A., 14 Civ.

3826 (MKB), 2015 WL 5579872, at *24 (E.D.N.Y. Sept. 22, 2015)).

### b.   Analysis

In the Amended Complaint, Plaintiff alleges that Ralph Lauren "had a duty to

truthfully represent the [p]roduct, which it breached," and that "[t]his duty is based on [Ralph

Lauren]'s position, holding itself out as having special knowledge and experience [in] this area."

(Am. Cmplt. (Dkt. No. 16) ¶¶ 71-72)  These allegations are not sufficient to satisfy the "special

relationship" requirement.  See Bynum, 592 F. Supp. 3d at 314 (alteration in original) ("Plaintiff

asserts that his negligent misrepresentation claim is viable because Defendant had 'special knowledge and experience' in the sale of consumer goods and 'knew that Plaintiff[s] would rely on those claims.' . . . . These allegations[] . . . fall short of establishing a special relationship between Plaintiff and Defendant."); Colpitts, 527 F. Supp. 3d at 587 (second alteration in original) ("Plaintiff allege[d] that Defendant's duty here arose from 'h[olding] itself out as having special knowledge and experience' in the sale of the [p]roduct, . . . and a breach of that duty occurred when Defendant misrepresented the [p]roduct's attributes. . . . . "These allegations . . . fall short of establishing a special relationship between Plaintiff and Defendant."); Budhani v. Monster Energy Co., 527 F. Supp. 3d 667, 684 (S.D.N.Y. 2021) (dismissing negligent misrepresentation claim premised on allegation "that Defendant 'held itself out as having special knowledge and experience in production, service, and/or sale of the product type'").

"Here, the [Amended] Complaint describes nothing more than a common relationship 'which is that of an ordinary buyer and seller.'" Colpitts, 527 F. Supp. 3d at 587-88 (quoting Campbell, 516 F. Supp. 3d at 389). Because Plaintiff has not sufficiently pled that a "special relationship" existed between herself and Ralph Lauren, Defendant's motion to dismiss Plaintiff's negligent representation claim will be granted.[14]

### 5.    **Fraud Claim**

Ralph Lauren argues that "Plaintiff's fraud claim fails because she has not pled any plausible allegation that a fraud was committed and she has not pled fraud with the required specificity." (Def. Br. (Dkt. No. 22) at 29) In this regard, Ralph Lauren contends that "Plaintiff . . . fails to provide even a conclusory allegation as to scienter, requiring dismissal of her claim."

---

[14]  Given this determination, the Court does not reach Defendant's argument that Plaintiff's negligent misrepresentation claim is "barred by the economic loss doctrine." (Def. Br. (Dkt. No. 22) at 29)

Defendant also argues that the Amended Complaint's "[g]eneralized allegations about a desire to increase sales or profits do not give rise to an inference of fraudulent intent." (Id. at 30)

Plaintiff counters that the Amended Complaint

> exceeds [the] standard [for a fraud claim], (1) providing **what** statements ["100% Pima Cotton," and "Pima Cotton"] (or omissions) that the Plaintiff contends are fraudulent, (2) identifying **who** was the speaker [Defendant], (3) stating **where** ["Ralph Lauren Store, Woodbury Common Premium Outlets, 498 Red Apple Ct, Central Valley, NY 10917"] and **when** the statements (or omissions) were made ["in or around December 2019"], and (4) explaining **why** the statements are fraudulent ["the Product's Pima cotton percentage differed significantly from the labeling."].

(Pltf. Opp. (Dkt. No. 26) at 28-29 (emphasis and third, fourth, fifth, sixth, and seventh alterations in original))

### a.      **Applicable Law**

To plead fraud under New York law, a plaintiff must plead facts showing "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001) (citing Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 421 (1996)). Plaintiff must also meet the particularity requirements of Fed. R. Civ. P. 9(b), "'which require[] that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC, 783 F.3d 395, 403 (2d Cir. 2015) (quoting Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004)). A plaintiff must also "'allege facts that give rise to a strong inference of fraudulent intent'" – "'either (a) by alleging facts to show that defendants had both motive and opportunity to commit

fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious

misbehavior or recklessness.'"  Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290-91 (2d Cir. 2006)

(quoting Acito v. IMCERA Grp., Inc., 47 F.3d 47, 52 (2d Cir. 1995); Shields v. Citytrust

Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).

### b.    **Analysis**

The Amended Complaint alleges that "Defendant's fraudulent intent is evinced by

its knowledge that the [p]roduct was not consistent with its representations."  (Am. Cmplt. (Dkt.

No. 16) ¶ 80)  This allegation is not sufficient to establish fraudulent intent.  See Hoffmann,

2022 WL 17823171, at *8 (first alteration in original) (finding plaintiff's allegation that

"'[d]efendant's fraudulent intent is evinced by its knowledge that the [p]roduct was not

consistent with its representations'" "insufficient to establish fraudulent intent"))

The Amended Complaint likewise fails to allege facts showing that Ralph Lauren

"had both motive and opportunity to commit fraud," or "facts that constitute strong

circumstantial evidence of conspicuous misbehavior or recklessness."  Lerner, 459 F.3d at 291.

The Amended Complaint's allegations that (1) "[b]ecause [Ralph Lauren] controls the

[p]roduct's manufacturing, labeling, sales and marketing, Ralph Lauren possesses specialized

knowledge regarding the content of the product and is in a superior position to learn about the

product"; (2) "the records Ralph Lauren must maintain by law provide it with actual and/or

constructive knowledge of the falsity of the 100% Pima cotton claims"; and (3) "[Ralph Lauren]

knew, or should have known, or was willfully ignorant of the fact that the 100% Pima cotton

claim was false, deceptive, and misleading" (Am. Cmplt. (Dkt. No. 16) ¶¶ 77-79), "are

manifestly insufficient to satisfy the Fed. R. Civ. P[]. 9(b) standard for fraudulent intent."  See

Devey, 2022 WL 6827447, at *8; see also Hoffmann, 2022 WL 17823171, at *8 (third alteration

in original) (finding allegations insufficient where "Plaintiff claim[ed] [that] 'the records [d]efendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provide it with actual and/or constructive knowledge of the falsity of its misrepresentations'"); Campbell, 516 F. Supp. 3d at 391 (first alteration in original) (quoting Davis v. Hain Celestial Grp., 297 F. Supp.3d 327, 337 (E.D.N.Y. 2018)) (finding allegations "insufficient because '[t]he simple knowledge that a statement is false is not sufficient to establish fraudulent intent, nor is a defendants' "generalized motive to satisfy consumers' desires [or to] increase sales and profits"'").

In sum, the Amended Complaint does not adequately plead a fraud claim. Accordingly, Defendant's motion to dismiss Plaintiff's fraud claim will be granted.[15]

### 6.   Unjust Enrichment Claim

Ralph Lauren argues that "Plaintiff's unjust enrichment claim is based on the same allegations supporting the other tort claims asserted in the complaint," and that "[b]ecause 'plaintiff's other claims are defective. . . an unjust enrichment claim cannot remedy the defects[,]' and this claim must be dismissed." (Def. Br. (Dkt. No. 22) at 30-31 (omission in original) (quoting Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 791))

In response, Plaintiff argues that "[t]o the extent Plaintiff cannot satisfy the GBL or common law claims, the Court may hold that the unjust enrichment claim is viable," and that "because questions of fact remain as to all of Plaintiff's claims, dismissal of unjust enrichment is premature." (Pltf. Opp. (Dkt. No. 26) at 30)

---

[15]   Given this determination, the Court does not reach Defendant's argument that Plaintiff's fraud claim is "barred by the economic loss doctrine."  (Def. Br. (Dkt. No. 22) at 29)

### a.   Applicable Law

"Under New York law, '[u]njust enrichment is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff.'" Barton v. Pret A Manger (USA) Ltd., 535 F. Supp. 3d 225, 248 (S.D.N.Y. 2021) (alteration in original) (quoting Parks v. Ainsworth Pet Nutrition, LLC, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2019)). However, "'[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.'" Id. at 248-49 (quoting Shane Campbell Gallery, Inc. v. Frieze Events, Inc., 441 F. Supp. 3d 1, 6 (S.D.N.Y. 2020)).

"Two claims are duplicative of one another if they 'arise from the same facts . . . and do not allege distinct damages.'"   NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 175 (2d Cir. 2008) (omission in original) (quoting Sitar v. Sitar, 50 A.D.3d 667, 670 (2d Dept. 2008)).

### b.   Analysis

Plaintiff's unjust enrichment claim is premised on the same factual allegations underlying her other claims. (See Am. Cmplt. (Dkt. No. 16) ¶ 81 ("Defendant obtained benefits and monies because the [p]roduct was not as represented and expected, to the detriment and impoverishment of [P]laintiff and class members, who seek restitution and disgorgement of inequitably obtained profits."))

Plaintiff argues that – even if her other claims are not adequately pled – "the Court may hold that her unjust enrichment claim is viable." (Pltf. Opp. (Dkt. No. 26) at 30) "Plaintiff is incorrect that . . . [she] may plead unjust enrichment in the alternative. This is

because [P]laintiff could not succeed on [her] unjust enrichment claim and fail on [her] other claims." Hoffmann, 2022 WL 17823171, at *9.

Because Plaintiff's unjust enrichment claim is duplicative of her other claims, Ralph Lauren's motion to dismiss the unjust enrichment claim will be granted.

### C.   **Leave to Amend**

"When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." Hayden, 180 F.3d at 53 (citing Ronzani v. Sanofi S.A., 899 F.2d 195, 198 (2d Cir. 1990)).  "Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." Jin v. Metro. Life Ins. Co., 310 F.3d 84, 101 (2d Cir. 2002) (citing Foman v. Davis, 371 U.S. 178, 182 (1962); Koehler v. Bank of Berm. (N.Y.) Ltd., 209 F.3d 130, 138 (2d Cir. 2000)).

Here, the Court cannot find that any amendment would be futile.  Accordingly, Plaintiff may move for leave to file a Second Amended Complaint.  Any such motion will be filed by **July 31, 2023**.  The proposed Second Amended Complaint is to be attached as an exhibit to the motion.

## **CONCLUSION**

For the reasons stated above, Defendant Ralph Lauren's motion to compel arbitration is denied, and its motion to dismiss is granted, both as to Plaintiff's claims and her request for injunctive relief.  Any motion for leave to amend will be filed by **July 31, 2023,** and will include as an exhibit the proposed Second Amended Complaint.

The Clerk of Court is directed to terminate the motion (Dkt. No. 21).

Dated:  New York, New York
        July 20, 2023

SO ORDERED.

Paul G. Gardephe
United States District Judge